## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TALAYNA CLEMENTS                                         *
3512 Clay Place, NE                                      *
Washington, DC 20019                                     *
                                                         *
    *On Behalf of Herself and*                          *
    *All Others Similarly situated*                     *
                                                         *
    PLAINTIFF,                                      *
                                                         *
v.                                                       *   Case No.: _____
                                                         *
THE STADIUM GROUP, LLC                                   *
2127 Queens Chapel Road, NE                              *
Washington, DC 20018                                     *
                                                         *
    SERVE:    Professional Registered Agents, Inc.     *
            2600 Virginia Avenue, NW                *
            Suite 1112 NW                           *
            Washington, DC 20037                    *
                                                         *
    DEFENDANT.                                      *

*************************************************************************

## COLLECTIVE ACTION COMPLAINT

Plaintiff Talayna Clements a/k/a exotic dancer "Casey" ("Plaintiff"), by and through undersigned counsel, on behalf of herself and all others similarly situated, hereby submits her Collective Action Complaint against Defendant The Stadium Group, LLC d/b/a Stadium Club ("Defendant") to recover unpaid wages and statutory damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and to recover unpaid wages and statutory damages under the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001 *et seq.* ("DCMWA") as set forth below.

## PARTIES AND JURISDICTION

1.    Plaintiff is an adult resident of the District of Columbia.  At all times relevant, Plaintiff performed work duties as an exotic dancer at Defendant's Stadium Club exotic dance club in

Washington, D.C.  Plaintiff's consent to participate as a Plaintiff in an FLSA collective action is attached hereto as Exhibit 1.

2.      Defendant is a limited liability company formed under the laws of the District of Columbia with its principal place of business located in Washington, D.C.

3.      At all times, Defendant has done business as The Stadium Club, advertising itself to the public an exotic dance club featuring nude and semi-nude exotic dancers.

4.      At all times, Defendant was Plaintiff's "employer" for purposes of the FLSA and DCMWA.

5.      At all times, Defendant was engaged in commerce or in the production of goods for commerce within the meaning of § 3(s)(1) of the FLSA (29 U.S.C. § 203(s)(1)).

6.      At all times, Defendant qualified as an "enterprise" within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203(r)).

7.      At all times, Plaintiff was an individual employee engaged in commerce or the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

8.      This Court has jurisdiction over Defendant pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any act of Congress regulating commerce."  Subject matter jurisdiction is invoked under 28 U.S.C. § 1331 (Federal Question)  Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## FACTS

9.      Plaintiff was employed by Defendant as an exotic dancer from about February 7, 2012 through about March 31, 2012.

10.     On about April 1, 2012, Defendant terminated Plaintiff's employment citing Plaintiff's subjectively undesirable tattoos as cause for termination.

11.     Following Defendant's termination of Plaintiff's employ, Plaintiff regularly contacted Defendant requesting to be re-hired.  Defendant, through its manager, continued to refuse to re-hire Plaintiff but implied that if Plaintiff would engage in certain sexual activities with Defendant's manager, Defendant would re-hire Plaintiff.

12.     Plaintiff refused to engage in sexual activities with Defendant's manager and, eventually, on or about May 15, 2012, Defendant re-hired Plaintiff as an exotic dancer and Plaintiff continued to be employed by Defendant as an exotic dancer until about December 18, 2012.

13.     During the period of Plaintiff's employment, Plaintiff regularly and customarily worked about five (5) or more nights per week calculating to approximately forty-five (45) or more hours per week.

14.     At all times during the period of Plaintiff's employment, Defendant had knowledge that Plaintiff typically worked about forty-five (45) or more hours per week and suffered or permitted Plaintiff to work about forty-five (45) or more hours per week.

15.     At all times throughout Plaintiff's employment with Defendant, Defendant totally failed to pay Plaintiff any wages for work duties performed.

16.     At all times throughout Plaintiff's employment with Defendant, Plaintiff was an employee of Defendant and was never an independent contractor.

17.     While it is true that Defendant titled or classified Plaintiff as an independent contractor, at all times while working for Defendant, Plaintiff considered herself an employee of Defendant and that Defendant was Plaintiff's employer.

18.     At all times while Plaintiff was employed by Defendant, Defendant controlled all aspects of Plaintiff's job duties through strictly enforced employment rules.

19.     Defendant hired Plaintiff and, at all times, had the ability to discipline Plaintiff, fine Plaintiff, fire Plaintiff, and adjust Plaintiff's schedule.

20.     Defendant, at all times, supervised Plaintiff's work duties to make sure Plaintiff's job performance was of sufficient quality.

21.     At all times while Plaintiff was employed by Defendant, Plaintiff's pay and opportunity for wages was limited to Plaintiff's pay method set exclusively by Defendants.

22.     Defendant controlled all aspects of setting and enforcing Plaintiff's work schedule.

23.     Plaintiff was never able to make more money or enjoyed more financial benefits if Defendant was operating successfully and realizing increased or additional profits.

24.     At no time did Plaintiff make a financial investment in Defendant or any equipment belonging to Defendant.

25.     To perform the work duties that Plaintiff performed for Defendant, Plaintiff did not have or need any required certificate, education, or specialized training.

26.     At all times while Plaintiff was employed by Defendant, Defendant was in the business of operating a night club featuring exotic dancers and at all times it was Plaintiff's job duty for Defendant was directly related to exotic dancing performances for Defendant's customers.

27.     Plaintiff did not perform work that is exempt from the minimum wage or overtime requirement of the FLSA or DCMWA.

## FEES, FINES AND CHARGES

28.     In addition to failing to pay Plaintiff wages for hours worked, Defendant enforced a series of fees and fines requiring Plaintiff to actually pay Defendant a significant portion of the money Plaintiff received as tips from customers.

29.     On a typical shift, Plaintiff actually paid Defendant, through fines, fees, and charges, approximately two hundred fifty dollars ($250.00) or more.

30.     The fines and fees paid by Plaintiff to Defendant included, but were not limited to:

a)      A mandatory "tip-in" by Plaintiff to Defendant, per shift, ranging from $33.00 - $100.00 (or more if Defendant was hosting a special event);

b)      A mandatory "tip-out" by Plaintiff to Defendant's disc jockeys, House Mom, and security ranging from $50.00 - $60.00;

c)      A mandatory tip sharing of Plaintiff's on-stage and table dance tips to Defendant's "floor-man," ranging from $10.00 - $20.00 per table dance or stage appearance;

d)      A mandatory fine for calling out of work for sickness or other personal reasons ranging from $30.00 with a doctor's note to $60.00 or more without a doctor's note;

e)      Strictly enforced fines for violating club rules ranging from $100.00 - $300.00 per violation; and

f)      A mandatory sharing and assignment by Plaintiff to Defendant of all tips and monies received by Plaintiff from Defendant's customers for each performance of private and semi-private dances.

31.     The net result of Defendant's fee and fine system was that Plaintiff's regular hourly rate was actually properly calculated in the negative.[1]

---

[1] -$250.00 per shift * 5 shifts per week = -$1,250.00 per week / 45 hours per week = -$27.78 per hour for each of the 45 hours worked each week.

## COLLECTIVE ACTION ALLEGATIONS

32.     Plaintiff is pursuing this action as an FLSA and DCMWA collective action on behalf of herself and all other similarly situated individuals who performed work duties as exotic dancers for Defendant at Defendant's Stadium Club exotic dance club.

33.     In the present case, the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members.  The essence of this entire case is that the Plaintiff and other similarly situated individuals were improperly classified as independent contractors, were paid no wages for hours worked, and were subject to a series of unlawful fees and fines resulting in Plaintiff and each putative class member receiving a "net negative" regular hourly rate.

34.     Common to Plaintiff and all class members is that each individual received wages and overtime compensation from Defendant at a rate less than what is required by District and Columbia and Federal Law.

35.     Specifically, Plaintiff and each class member are seeking the difference between their "net negative" regular hourly rates and the legally required minimum wage and overtime rate and statutory damages from Defendant under the FLSA and DCMWA.

36.     In the present case, the number of class members is believed to exceed one hundred fifty (150) current and former exotic dancers.

37.     All class members are readily identifiable from information and records, on information and belief, in the possession and control of the Defendant.

## CAUSES OF ACTION

### COUNT I
### Violation of Federal Fair Labor Standards Act
### (Minimum Wage)

38.    Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-37 above as if each were set forth herein.

39.    Section 206(a)(1) of the FLSA provides that no employer shall employ any employee for an hourly wage of less than the federal minimum wage, currently $7.25 per hour.

40.    At all times, Plaintiff was an "employee" covered by the FLSA, 29 U.S.C. § 206(a)(1).

41.    At all times, Defendant was Plaintiff's "employer" under the FLSA.

42.    Defendant, as Plaintiff's employer, was obligated to compensate Plaintiff for all hours worked at an hourly rate not less than the Federal Minimum Wage.

43.    At all times, Defendant paid Plaintiff no wages for hours worked.

44.    More exactly, when the fees and fines that Defendant deducted from Plaintiff's tips and personal monies are factored in, Defendant paid Plaintiff a net average hourly rate equal to approximately negative Twenty Seven Dollars and Seventy-Eight Cents (-$27.78) per hour.

45.    At all times relevant, Plaintiff's net negative hourly rate fell below the applicable Federal Minimum Wage.

46.    "The FLSA allows employers to pay less than minimum wage to employees who receive tips….The mechanism it creates to allow employers to pay less than minimum wage is the "tip credit." *See* 29 U.S.C. § 203(m)).

47.     Employers may only take a tip credit if certain requirements are met. See 29 U.S.C. § 203(m). Namely, (1) the employer must give the employee proper notice of taking a tip credit; (2) the employee must retain all of her tips except for those lawfully shared with other employees; and (3) the employee, through her tips, must make up the difference between the tipped minimum wage and full minimum wage—if she does not, the employer must pay the her the difference in wages. See id.; 29 C.F.R. § 531.59.

48.     Here, Defendant did not give Plaintiff any notice that it was taking or intended to take the tip credit.

49.     Here, Defendant (because it took and kept for its own use) a portion of Plaintiff's tips, as a consequence, Plaintiff did not retain all of her tips received from Defendant's customers.

50.     Here, Defendant failed to pay Plaintiff the difference between the minimum wage and the amounts Plaintiff received from tips on nights where Plaintiff's tips did not meet or exceed the minimum wages.

51.     Because the three (3) "tip credit" requirements were met by Defendant, Defendant cannot avail itself of the FLSA's "tip credit" in calculating back wages owed to Plaintiff.

52.     Defendant has failed and refused to compensate Plaintiff (and others similarly situated) at an hourly rate at least equal to the Federal Minimum Wage as required by the FLSA for numerous hours worked.

53.     Defendant's failure and refusal to pay compensation to Plaintiff as required by the FLSA was willful and intentional, and not in good faith.

WHEREFORE, Defendant is liable to Plaintiff (and all others similarly situated who have joined in this suit) for unpaid minimum wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action, and

any other and further relief this Court deems appropriate.

## COUNT II
### Violation of Federal Fair Labor Standards Act
### (Overtime)

54.    Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-53 above, as if each were set forth herein.

55.    Section 207(a)(1) of the FLSA provides that no employer shall employ any of its employees for a workweek longer than forty (40) hours unless such employee receives compensation for her employment in excess of the hours above specified at a rate not less than the higher of one-and-one-half (1½) times the regular rate at which she is employed or one-and-one half times the Federal Minimum Wage.[2]

56.    At all times, Plaintiff was an "employee" covered by the FLSA, 29 U.S.C. § 207(a)(1), and Defendant was Plaintiff's "employer" under FLSA, 29 U.S.C. § 207(a)(2).

57.    Defendant, as Plaintiff's employer, was obligated to compensate Plaintiff at the overtime rate of one-and-one-half (1½) times the higher of Plaintiff's regular rate of pay or the applicable federal minimum wage for all hours worked per week in excess of forty (40).

58.    As set forth above, while in Defendant's employ, Plaintiff typically and customarily worked about five (5) or more hours of overtime, each week.

59.    As set forth above, Defendant failed and refused to compensate Plaintiff properly, and as required by the FLSA, for all overtime hours worked each week in excess of forty (40).

---

[2] If the Court is persuaded that Plaintiff received "services charges" sufficient to satisfy Defendant's Minimum Wage obligation (and Plaintiff emphatically rejects this position as legally inapposite), Plaintiff's overtime rate is properly calculated by (1) adding all remuneration Plaintiff received as "service charges" each week; (2) dividing this amount by the total number of hours Plaintiff worked each week (creating Plaintiff's "regular hourly rate"; and (3) multiplying Plaintiff's regular rate by 1.5. *See* 29 C.F.R. §778.112.

60.     Defendant's failure and refusal to pay Plaintiff as required by the FLSA for overtime hours worked each week was willful and intentional, and was not in good faith.

WHEREFORE, Defendant is liable to Plaintiff (and all other similarly situated individuals that join this action) under Count II for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

**COUNT III**
**DCMWA**
**(Minimum Wage and Overtime)**

61.     Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-54 above, as if each were set forth herein.

62.     Plaintiff was an "employee" and Defendant was Plaintiff's "employer" within the meaning of DCMWA.

63.     As Plaintiff's "employer," Defendant was obligated to pay Plaintiff wages at least equal to $8.25 per hour, the District of Columbia Minimum Wage and overtime compensation at the rate of not less than the higher of one-and-one-half (1½) times the higher of Plaintiff's regular hourly rate of pay or the District of Columbia Minimum Wage for all hours worked in excess of forty (40) hours in any given workweek.

64.     As set forth above, while in Defendant's employ, Plaintiff worked many non-overtime and overtime hours for which Defendant failed and refused to properly compensate Plaintiff and other similarly situated individuals as required by the DCMWA for all non-overtime and overtime hours worked.

65.     Unpaid minimum wage compensation and overtime pay is therefore due and owing to Plaintiff and other similarly situated individuals under the DCMWA.

66.     Defendant's failure to comply with its obligations under DCMWA to pay Plaintiff for all hours worked as required by the DCMWA was willful and intentional, and was not in good faith.

WHEREFORE, Defendant is liable to Plaintiff and all other similarly situated individuals under Count III for unpaid non-overtime and overtime wages in such amounts as are proven at trial, plus interest (both pre- and post-judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

Respectfully submitted,

Philip B. Zipin, Bar No. 367362
Gregg C. Greenberg, Bar No. MD17291
The Zipin Law Firm, LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910
301-587-9373 (ph) / 301-587-9397 (fax)
Email: pzipin@zipinlaw.com
       ggreenberg@zipinlaw.com

*Counsel for Plaintiff*